**IN THE UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

THERESA HILL,

                Plaintiff,

v.                                    CIVIL  ACTION  NO.  3:09-0487

WELLS FARGO BANK, N.A.,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a Motion for Partial Summary Judgment [doc. no. 47] by Plaintiff Theresa Hill and a Motion for Summary Judgment by Defendant Wells Fargo Bank, N.A. [doc. no. 45].  On June 7, 2010, the Court held a Pretrial Conference in which it heard argument on the motions.  Upon consideration of the issues, the Court **DENIES** Plaintiff's motion and **DENIES, in part,** and **GRANTS, in part,** Defendant's motion.

**I.**
**FACTS**

In or about September 2005, Plaintiff purchased real estate in Dunlow, West Virginia, in which she, her husband, and her six children resided in the primary structure on the property.  To purchase the property, Plaintiff obtained an adjustable rate mortgage from Defendant for $71,100.00.  The mortgage is secured by a Deed of Trust.  Under the Deed of Trust, Plaintiff was required to

maintain home owners insurance on the property.  If Plaintiff failed to maintain insurance, Defendant was authorized under the Deed of Trust to obtain such insurance at Plaintiff's expense.[1]

By May of 2008, Plaintiff was eight months in arrears in her mortgage payments. Defendant agreed to a loan modification in the amount of $77,382.35.  The premiums were set for $676.31 per month beginning July 1, 2008.  Plaintiff failed to make her monthly premiums on September and October 1, 2008.  Plaintiff also did not renew her home owners insurance policy. Therefore, Defendant exercised its right under the Deed of Trust to purchase an insurance policy. The policy Defendant purchased was for the same amount of coverage as Plaintiff's prior policy, and the cost of the insurance was added to Plaintiff's monthly mortgage payments.  Plaintiff was named as an additional insured under the policy.  There was no personal content insurance under either policy.  On October 30, 2008, the house burned down, and insurance proceeds in the amount of $79,000 subsequently were paid in the names of both Wells Fargo and Plaintiff.

Plaintiff states she received the insurance check in November.  In one of her initial conversations with Defendant, Plaintiff said she would like to rebuild on the property in the spring. She said she could ask Habitat for Humanity or a local church to build her a house.  With charitable help, she said she thought she could build a house for $10,000 to $15,000.  As Plaintiff indicated she thought she would like to rebuild, Defendant sent her a packet of information regarding the

---

[1]Section 5 of the Deed of Trust provides, in relevant part: "Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire . . . . If Borrower fails to maintain [such insurance] . . ., Lender may obtain insurance coverage, at Lender's option and Borrower's expense." *Deed of Trust*, § 5, in part.

rebuilding process. However, shortly after the initial conversation, Plaintiff said she told Defendant she would be unable to rebuild for $79,000. Therefore, Plaintiff signed the check and forwarded it to Defendant with a hand-written note stating: "Funds from Insurance check to be applied directly to the principal." The note was signed by Plaintiff and dated November 28, 2008. Unfortunately, however, because Plaintiff had missed payments, she actually owed Defendant $80,151.57, which was slightly more than the insurance proceeds.

As Plaintiff did not have sufficient funds to completely pay off the mortgage and she earlier stated that she wanted to rebuild, Defendant declined to apply the funds to the loan and, instead, placed the funds in a restricted escrow account. It is Defendant's position that Plaintiff either must rebuild or pay off the mortgage in full. In the meantime, Defendant maintains that Plaintiff remains responsible to make her monthly mortgage payments.

Following the fire, Plaintiff and her family moved into her mother-in-law's residence for approximately two weeks while they made repairs to a "shack" on the property so they would have a place to live on a temporary basis. They lived in the shack for approximately a year, but Plaintiff describes the structure as unsafe and uninhabitable.[2] In fact, Plaintiff states that Plaintiff now lives with a friend, and Plaintiff's husband and another person live in the shack. Although the shack was not insured before the fire, Defendant has now insured it and has billed Plaintiff for the cost of the insurance.

---

[2]Plaintiff describes the conditions of the structure in her deposition. Based upon her description, it is clear that the structure is extremely dangerous and not suitable as living quarters.

-3-

In her Complaint, Plaintiff asserts two causes of action.  First, Plaintiff claims in Count I that Defendant breached its contract with her and its duty of good faith and fair dealing in the way it handled the insurance proceeds.  In Count II, Plaintiff asserts Defendant engaged in an illegal debt collection under West Virginia law.  Plaintiff moves for partial summary judgment on Count I, and Defendant moves for summary judgment on Count I and for partial summary judgment on Count II.

## II.
## STANDARD OF REVIEW

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c).  In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256.  Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## II.
## DISCUSSION

In its motion for summary judgment, Defendant asserts that, under Section 5 of the Deed of Trust, insurance proceeds must be applied to rebuild the structure unless rebuilding is shown to be economically infeasible.  This section provides, in part

> Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction . . . .  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Insurance proceeds shall be applied in the order provided for in Section 2.

*Deed of Trust*, § 5, in part.  Although Plaintiff later changed her mind about rebuilding, Defendant asserts that she never demonstrated that rebuilding was economically infeasible as required under this section.  Therefore, Defendant claims it acted within the terms of the Deed of Trust by placing the money in the restricted escrow account for rebuilding purposes.

On the other hand, Plaintiff claims the feasibility of rebuilding is, at the very least, a jury issue.  Despite Plaintiff's early indication that she would like to rebuild, she asserts she later

told Defendant numerous times it was impossible to rebuild for $79,000. She states her initial estimate was pure speculation and Defendant should have realized that fact. In addition, just eighteen days after the fire, the claim adjuster for Assurant Specialty Property, the company Defendant purchased the policy from in this case, determined that the cost of repair is $93,575.50, and the replacement cost for the same structure is $166,692.99. Likewise, Plaintiff's expert opined that the cost to rebuild is $125,949.08. Thus, Plaintiff asserts that a genuine issue of material fact exists on the economic feasibility issue.

Defendant filed motions in limine to exclude any evidence regarding the economic feasibility of rebuilding from Plaintiff, her husband, the claims adjuster, and Plaintiff's expert. If such evidence is excluded, Defendant argues that Plaintiff's claims fail because she cannot show that Defendant acted outside the scope of the contractual terms by placing the money in the restricted escrow account. As explained at the Pretrial Conference, the Court determined that the many of the issues raised in motions in limine are ones best resolved near or at trial. Thus, the Court declined to rule on those motions at the hearing. However, assuming for the moment that such evidence is admissible, the Court finds it creates a genuine issue of material fact regarding the economic feasibility of rebuilding and whether such information was known or should have been know by Defendant. Therefore, summary judgment in favor of Defendant on this issue is not appropriate at this time.[3]

---

[3]As discussed at the Pretrial Conference, the Court also rejects any assertion that Plaintiff pled a breach of the covenant of good faith and fair dealing as an independent "stand alone" cause of action. It clearly was pled as part of the Breach of Contract claim in Count I. *See Highmark West Virginia, Inc. v. Jamie*, 655 S.E.2d 509, 514 (W. Va. 2007) (citation omitted) (stating "an implied (continued...)

In her Motion for Partial Summary Judgment, Plaintiff asserts that Defendant violated the Deed of Trust and the West Virginia Consumer Credit and Protection Act (WVCCPA)[4] by failing to apply the insurance proceeds as a payment on the mortgage.  However, Section 5 of the Deed of Trust first requires rebuilding to be economically infeasible before the insurance proceeds can be applied in a different manner.  As economic feasibility remains at issue, the Court declines to determine whether Defendant violated the Deed of Trust and the WVCCPA at this point.  Likewise, the Court declines to address at this time Defendant's argument for summary judgment on  Plaintiff's  illegal debt collection claim under the WVCCPA in Count II of the Complaint.

The parties do agree, however, that Plaintiff is not entitled to punitive damages for either a breach of contract or violations of the WVCCPA.  Therefore, the Court **GRANTS** summary judgment in favor of Defendant on that claim.

---

[3](...continued)
covenant of good faith and fair dealing does not provide a cause of action apart from a breach of contract claim").

[4]Specifically, Plaintiff points to West Virginia Code § 46A-3-111(1), which provides, in part: "[w]hen a consumer credit sale or consumer loan is precomputed, all payments on account shall be applied to installments in the order in which they fall due . . . ." W. Va. Code § 46A-3-111(1), in part.

**III.**
**CONCLUSION**

Accordingly, for the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment [doc. no. 47], and **DENIES, in part,** Defendant's Motion for Summary Judgment, but **GRANTS** its motion with regard to Plaintiff's claim for punitive damages [doc. no. 45].

The Court **DIRECTS** the Clerk to send a copy of this Order and Notice to counsel of record and any unrepresented parties.

ENTER:        June 9, 2010

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

-8-